UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:10-CV-522-H

MARGARET JONES                                                                                                 PLAINTIFF

v.

PATRICK R. DONAHOE, Postmaster General
United States Postal Service                                                    DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff Margaret Jones brings this action against Patrick R. Donahoe in his capacity as Postmaster General of the United States Postal Service ("USPS"), alleging hostile work environment and discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*.[1] Presently before the Court is USPS' motion for summary judgment on these claims. For the reasons that follow, the Court finds that USPS is entitled to summary judgment.

I.

Though the facts of the case may seem complicated, in the end, none of the disputed facts implicate the final decision here.

In 1985, Jones, an African American female, began working at USPS as a letter sorting machine clerk. In 1990, USPS promoted her to Human Resource ("HR") Specialist in the Personnel Department of the Louisville, Kentucky office. Jones' primary responsibilities included processing and hiring Rural Carrier Associates ("RCAs"), among other things.

---

[1] Initially, Jones brought a gender discrimination claim in addition to her race discrimination claim. In her response to USPS' motion for summary judgment, Jones effectively withdrew this claim. ECF No. 54. Accordingly, the Court dismisses the gender discrimination claim.

In 2005, USPS began making adjustments to reorganize its nationwide HR department. The adjustments resulted in the loss of several HR Specialists, particularly in Louisville, Kentucky, Lexington, Kentucky, and Evansville, Indiana, collectively known as "the Louisville district." After reorganization efforts concluded, the Louisville district was left with a staff shortage. Because of this, USPS gave all remaining HR Specialists extra duties based on their areas of expertise. Sarah Rutter, a Caucasian female and Jones' immediate supervisor, asked Jones to temporarily hire RCAs in the Lexington and Evansville offices, in addition to her hiring responsibilities in Louisville.

By April 2006, Rutter relocated to a different department within USPS. Following Rutter's departure, Lisa Smith, an African-American Female and fellow HR Specialist, became Jones' supervisor, leaving Jones as the only non-supervisory HR Specialist trained to process RCAs. Management assigned her four employees to assist with her job duties. At some point after she received the additional responsibilities, Jones contends that she approached Smith and Tina Baker, the HR Department's Acting Personnel Manager, to inform them of physical ailments she suffered as a result of her heavy workload and to inquire about extending her work week. Management denied her request. By early 2007, the Louisville district implemented a rotational assignment of all duties within the HR Department. In an effort to equalize the workload, USPS trained all HR Specialists to perform various job duties within the department, including the hiring of RCAs.

In November 2006, Smith evaluated Jones based on four core requirements, only two of which are relevant here: timely hiring of RCAs and oral communication. Smith gave Jones a high contributor rating for timely hiring RCAs, but Gordon Deapen, a Caucasian male and HR

Department Manager, reduced her rating to that of a "contributor," because her actual hiring numbers did not comport with the objective statistics required for "high contributor" status. This reduction allegedly resulted in a $448 decrease in Jones' annual pay.

Jones also describes multiple instances throughout her employment in which management reproached or disciplined her without cause. In August 2006, she claims that Rutter requested that she provide a report on the status of all of her pending work. Apparently, Rutter informed Jones that multiple postmasters had complained to management that Jones exhibited rude behavior in the course of their interactions. Two days later, Michael Russell, a Caucasian male and the HR Department's Manager of Personnel Services, initiated a conversation with Jones in which he expressed concern about her treatment of the postmasters and her inability to complete her work in a timely manner.

Approximately four months later, Jones claims that she arrived at her desk to find that Smith assigned her additional work. When she refused to accept the added duties, Rutter, Baker, and Smith requested her attendance at a meeting and presented her with a copy of the "Obedience to Order," a document printed in the United States Postal Employee and Labor Relations Manual requiring Jones to submit to the authority of her supervisors. Jones excused herself from the meeting to speak briefly with a union representative, who recommended she perform the work. When she returned to the meeting room to accept the additional responsibilities, another employee had already agreed to perform the assignment.

Finally, on February 1, 2007, Smith and Russell conducted a pre-disciplinary interview of Jones, with her union representative present, to inquire about 1300 hours of sick leave she had taken. Management did not impose any discipline.

Jones filed a claim with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination and hostile work environment based on race and gender. The Administrative Law Judge found that USPS did not discriminate against Jones, and the Equal Employment Opportunity Office of Federal Operations upheld the decision. Jones retired from USPS in September of 2008 and filed this action on August 4, 2010.

II.

USPS moves for summary judgment on both of Jones' claims under Federal Rule of Civil Procedure 56, which entitles a party to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of showing either that no dispute exists as to any material fact or that the nonmoving party cannot prove an essential element of its case for which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once accomplished, the nonmoving party can overcome summary judgment by controverting the moving party's arguments with specific facts. *Matsushita Electrical Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Court need not accept unsupported or conclusory allegations. *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003). However, the Court will view the record evidence in the light most favorable to the nonmoving party. *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 339 (6th Cir. 2010). The Court will first address USPS' arguments in favor of summary judgment as to Jones' discrimination claims before turning to her hostile work environment claim.

III.

Jones contends that USPS management racially discriminated against her. Because Jones only offers circumstantial evidence of Title VII discrimination, the Court must apply the *McDonnell Douglas* burden shifting scheme. Plaintiff has the initial burden of proving a prima facie case. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). To establish a prima facie case of race discrimination, a plaintiff must demonstrate that:

> (1) [she] is a member of a protected class; (2) [she] is qualified to perform the work; (3) [she] suffered an adverse employment decision; and (4) [she] was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees.

*Baxter Healthcare*, 533 F.3d at 391. Jones undisputedly meets the first two elements, but USPS contests the final two.

A.

The Sixth Circuit defines an adverse employment action as a "materially adverse change in the terms and conditions of a [plaintiff]'s employment." *White v. Burlington N. & Sante Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004). The action must evidence "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Subsequently, the Sixth Circuit said:

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

5

*Reese v. Mich. Family Independence Agency*, 31 F. App'x 172, 174 (6th Cir. 2002). Jones alleges three possible material adverse actions: conducting a pre-disciplinary interview for unapproved sick leave, giving her a substantial increase in workload, and lowering her performance evaluation score that resulted in a reduction in pay. The Court has serious doubts about the first two.

The pre-disciplinary interview regarding Jones' multiple unexplained sick days may have been an inconvenience, but does not constitute a materially adverse change in the terms and conditions of her employment. Upon hearing Jones' explanation for taking sick days, management did not impose disciplinary action. Furthermore, a simple meeting with management, without more, should not amount to a materially adverse employment action. The same sentiment applies to the increased workload claim. The definition of a materially adverse employment action typically involves a decrease in responsibilities, job duties, or benefits. A substantial increase in work load alone does not qualify as a materially adverse change.

On the other hand, the $448 annual decrease in pay would qualify as a materially adverse employment action, both subjectively in the mind of the affected party and objectively as a significant portion of the party's annual income.

B.

The fourth element of a prima facie case asks whether management treated Jones less favorably than similarly situated individuals who were not members of the protected group. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992); *see also Davis v. Monsanto Chemical Co.*, 858 F.2d 345, 347 (6th Cir. 1988) ("[Plaintiff] must produce evidence that,

because of their race, they were treated less favorably than similarly situated white employees.") (internal citations omitted).

Jones argues that USPS management gave her a lower performance rating than similarly situated white coworkers. True, Jones apparently received the lowest evaluation score among all the other HR Specialists performing generally similar work. But, the evidence of similarity is not strong. For instance, one employee, Pam Meyer, a Caucasian HR Specialist, received a lower score based on a *subjective* core requirement, oral communications, while Jones' score decreased because of an *objective* report. Because management lowered Meyer's score based on personal perception rather than a computer-generated statistic, Meyer received seemingly less favorable treatment than Jones. Moreover, although Jones' evaluation score was lower than her colleagues' scores, different supervisors evaluated them and different rating officials entered their scores.

However, no employee other than Jones received a pay cut and the differences in the evaluations of other employees could be subject to dispute. Therefore, for purposes of this discussion, the Court will assume that Jones can meet the fourth element of the prima facie test.

IV.

Under the *McDonnell-Douglas* burden shifting scheme, after Jones has established a prima facie case USPS may offer legitimate, non-discriminatory reasons for Jones' pay cut. *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996). It does so by saying that Jones' lowered evaluation score was based on an objective criteria in her performance evaluation rather than a subjective review of Jones and her work. Indeed, this is a legitimate reason for a pay cut. Accordingly, the burden shifts back to Jones to show that the reasons USPS articulated were

mere pretext. *See Texas Dept. of Commun. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). The Sixth Circuit defined the means by which one may prove pretext:

> To make a submissible case on the credibility of [her] employer's explanation, a plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the adverse employment action], or (3) that they were insufficient to motivate [the adverse employment action].

*Briggs v. Potter*, 463 F.3d 507, 515 (6th Cir. 2006) (quoting *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)) (emphasis omitted).

Primarily, Jones objects to the lowering of her evaluation score. However, the evidence shows that USPS' performance evaluation process is quite objective as to Jones' decreased status as a "contributor" for the timely hiring of RCA employees. The USPS evaluation system software contains a report that tracks the number of RCA hires for each HR Specialist. No one has disputed the numbers. Because Jones' number did not reach "high contributor" status, the report alerted Deapen that Smith improperly labeled Jones a "high contributor." Based on the computer alert and report, Deapen subsequently reduced Jones' evaluation score from "high contributor" to "contributor." This, in turn, lowered Jones' job performance evaluation score for the fiscal year.

Jones has failed to produce evidence to show either that USPS lowered her evaluation score without a basis in fact, that it lowered her score for some other reason, or that the lower evaluation did not actually motivate the lower pay. Jones acknowledges that Deapen based her score for this particular core requirement on an objective chart which measures the number of RCAs an employee successfully hired. She further recognizes that her subjective oral communications core requirement could have been lowered due to the past complaints of her

8

alleged rude behavior on the telephone. Otherwise, Jones has produced no reasonable argument that USPS' reasons for her lower evaluation and her subsequent pay cut were mere pretext for discrimination.[2]

Plaintiff does not make an argument that the lower performance evaluation was a objectively insufficient basis for lower pay. Accordingly, USPS is entitled to summary judgment on Jones' race discrimination claims.

V.

Jones also alleges that USPS management subjected her to abusive conduct so severe and pervasive that it created a hostile work environment.[3] To establish a hostile work environment claim based on race discrimination, Jones must prove the following five elements:

> (1) she was a member of a protected class; (2) she was subjected to unwelcomed racial harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the existence of employer liability.

*Barrett*, 556 F.3d at 515 (citing *Hafford*, 183 F.3d at 512). Jones relies on the following assertions to establish racial harassment: (1) USPS inadequately responded to Jones' complaints by failing to schedule meetings; (2) Smith looked through papers on Jones' desk to assess workload; (3) Smith directed her to process additional work and gave her a copy of the "Obedience to Order"; (4) USPS conducted a pre-disciplinary interview regarding unscheduled

---

[2] Even if the Court determined that Jones' workload increase was a materially adverse employment action, Jones failed to produce any evidence to suggest that the decision to assign to her the additional duties served as pretext for discrimination. The HR Department's reorganization efforts resulted in a staff shortage, and management needed to distribute additional duties to the remaining employees. Jones was the only HR Specialist trained to hire RCAs. As a result, management chose to give the additional work to Jones with the help of four assistants, rather than train the other HR Specialists to hire RCAs. Jones contends that these individuals proved unhelpful because one was blind, and another allegedly had an "attendance problem." However, that does not undermine the impetus behind their assignment to Jones – to help alleviate the workload. Jones does not allege any facts to suggest that the assignment of extra work was a mere pretext to discriminate.

[3] The Court doubts whether Jones alleged this claim appropriately in her complaint. Nevertheless, the Court will discuss the hostile work environment claim due to Jones' arguments in support presented throughout her subsequent submissions.

sick leave; (5) management questioned Jones regarding complaints received from postmasters about her behavior on the telephone; and (6) USPS burdened Jones with increased workload beginning in 2006.

For the reasons that follow, Jones falls far short of establishing that any of these events can support a hostile work environment claim.

A.

Most important, Jones presents no facts from which a jury could find that race motivated the treatment that she experienced. "Facially neutral abusive conduct can support a finding of . . . animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly . . . discriminatory conduct[.]" *Jordan v. City of Cleveland*, 464 F.3d 584, 596 (6th Cir. 2006) (citing *Jackson*, 191 F.3d at 662 ("[E]ven though a certain action may not have been specifically racial in nature, it may contribute to the plaintiff's proof of a hostile work environment if it would not have occurred but for the fact that the plaintiff was African American.")). Here, Jones' allegations of abusive conduct are facially neutral, and Jones presents no reasonable argument that USPS engaged in "overtly discriminatory conduct" to support a hostile environment claim. *Id.* Therefore, the alleged abusive conduct, even if true, cannot alone establish the third element of a prima facie hostile work environment claim.

B.

Finally, the Sixth Circuit requires conduct to be severe and pervasive enough "to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive." *Barrett*, 556 F.3d at 514. Most of Jones' allegations, particularly the two threats of disciplinary action, the inquiry into the nature of

Jones' interactions with a postmaster, and the job evaluation score and subsequent decrease in pay, relate to what management perceived as work performance deficiencies, unrelated to Jones' race. None of these incidents can reasonably be considered severe enough to satisfy the hostility requirement. Finally, aside from her low job evaluation score, which may have been personally offensive, a reasonable person would not consider them racially offensive.

An employee's stress over a heavy workload and sensitivity to criticism do not create a Title VII claim, absent some clear racial animus. Jones offers only her subjective beliefs that race motivated these incidents and that these incidents interfered with her work. Title VII is "not intended to make actionable claims of workplace disagreements or objectionable actions or comments." *Taylor,* 2008 WL 115019, at *2 (citing *Oncale*, 523 U.S. at 80)). Accordingly, USPS is entitled to summary judgment on Jones' hostile work environment claim.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the Defendant United States Postal Service's Motion for Summary Judgment is GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE.

This is a final order.

cc: Counsel of Record